1

2

3

4              IN THE UNITED STATES DISTRICT COURT

5           FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7    AARON WOOLFSON, et al.,              Case No.  21-cv-07833-MMC

8              Plaintiffs,

9         v.                              **ORDER GRANTING CONN**
                                          **APPLIANCES, INC.'S MOTION TO**
10   CONN APPLIANCES, INC., et al.,       **DISMISS FOR LACK OF PERSONAL**
                                          **JURISDICTION; GRANTING MUNSCH**
11             Defendants.                **HARDT KOPF & HARR, P.C.'S**
                                          **MOTION TO DISMISS FOR LACK OF**
                                          **PERSONAL JURISDICTION;**
12                                        **DENYING PLAINTIFFS' REQUEST**
                                          **FOR LEAVE TO CONDUCT**
13                                        **JURISDICTIONAL DISCOVERY;**
                                          **GRANTING PLAINTIFFS' REQUEST**
14                                        **FOR LEAVE TO AMEND; DENYING**
                                          **AS MOOT DEFENDANTS' JOINT**
15                                        **MOTION TO DISMISS FOR**
                                          **IMPROPER VENUE OR, IN THE**
16                                        **ALTERNATIVE, TO TRANSFER;**
                                          **CONTINUING CASE MANAGEMENT**
17                                        **CONFERENCE**

18

19        Before the Court are the following three motions, each filed December 6, 2021:

20   (1) defendant Conn Appliances, Inc.'s ("Conn Appliances") "Motion to Dismiss Based on

21   Lack of Personal Jurisdiction"; (2) defendant Munsch Hardt Kopf & Harr, P.C.'s ("MHKH")

22   "Motion to Dismiss Based on Lack of Personal Jurisdiction"; and (3) defendants'

23   "Joint . . . Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer Venue

24   to the Southern District of Texas."  Each motion has been fully briefed.  Having read and

25   considered the papers filed in support of and in opposition thereto, the Court rules as

26   follows.[1]

27   _____

28        [1] By order filed March 1, 2022, the Court took the matters under submission.

**BACKGROUND**

Plaintiff Aaron Woolfson ("Woolfson") is a database and Telephone Consumer Protection Act ("TCPA") expert and the founder of a plaintiff TelSwitch, Inc. ("TelSwitch"), a "California-based telecommunications and technology company." (See Compl. at 4:11-14.) From mid-2016 to April 2017, Woolfson provided "consulting and expert legal services" to defendant Conn Appliances, a Texas-based "retail furniture and appliance outlet," in connection with "legal actions" brought by Conn Appliance customers who "complained they [had] receive[d] calls relating to past due payments in violation of the TCPA." (See Compl. at 5:11-28.) Those legal actions (hereinafter, "TCPA cases"), were "handled primarily" by defendant MHKH, a Texas law firm. (See Compl. at 2:2-5, 6:14-15.)

In November 2016, Woolfson "traveled to [Conn Appliances'] facilities in Texas" and "inspected [its] telephone systems and operating procedures . . . so that [he] could offer opinions and expert testimony about . . . those systems." (See Compl. at 6:6-10.) Based on said inspection, Woolfson prepared an expert report (hereinafter, "Harper Report"), which was filed in a TCPA case brought against Conn Appliances in a district court in Texas, and from which he derived "similar" expert reports, including a report (hereinafter, "Johnson Report") prepared for an arbitration to be conducted by the American Arbitration Association ("AAA"). (See Compl. at 7:4-20.)[2] In March 2017, "shortly after" Woolfson prepared the Johnson Report, Conn Appliances "stopped paying" plaintiffs for their services, and, in April 2017, plaintiffs stopped doing work for Conn Appliances. (See Compl. at 8:5-8.)

On July 21, 2020, Woolfson "received an email from an attorney," alerting him that Conn Appliances and MHKH "had listed him as an expert witness and had submitted" an "altered version of the Johnson Report" in one of its TCPA cases (hereinafter,

---

[2] The Harper Report was registered with the United States Copyright Office on April 23, 2021. (See Compl. at 11:18-19.)

United States District Court
Northern District of California

1 "Hernandez case").  (See Compl. at 8:26-9:14.)  Plaintiffs allege that Conn Appliances

2 and MHKH used the report "to create the false impression that [p]laintiffs had been

3 retained as experts in the case without having to actually pay [p]laintiffs for that

4 retention . . . , even though they knew that [p]laintiffs had not done any services for [them]

5 since April 2017."  (See Compl. at 11:2-6.)

6 Based on the above allegations, Woolfson asserts a cause of action for "Copyright

7 Infringement," and both Woolfson and TelSwitch assert causes of action for "Unfair

8 Business Practices Under Cal. Bus. & Prof. Code 17200" ("UCL") and for "Quantum

9 Meruit."

10 **DISCUSSION**

11 By their respective motions, Conn Appliances and MHKH seek an order

12 dismissing the above-titled action, or, in the alternative, transferring it to the Southern

13 District of Texas, on the grounds that neither defendant is subject to personal jurisdiction

14 in California, the Northern District of California is not a proper venue, and the Northern

15 District of California is not a convenient forum.

16 **I. Personal Jurisdiction**

17 A plaintiff bringing an action against a non-resident defendant bears the burden of

18 establishing that the district court has personal jurisdiction over such defendant.  See

19 FDIC v. British-Am. Ins. Co., 828 F.2d 1439, 1441 (9th Cir. 1987).  For a court to exercise

20 personal jurisdiction over a nonresident defendant, "due process requires that the

21 defendant have certain minimum contacts with the forum state such that the maintenance

22 of the suit does not offend traditional notions of fair play and substantive justice."  See

23 Ranza v. Nike, Inc., 793 F.3d 1059, 1068 (9th Cir. 2015) (internal quotation and citation

24 omitted).  "The strength of contacts required depends on" whether "general jurisdiction" or

25 "specific jurisdiction" is invoked.  See id.  General jurisdiction requires contacts "so

26 continuous and systematic" as to permit the court "to hear any and all claims against [the]

27 defendant, whether or not the conduct at issue has any connection to the forum."  See id.

28 at 1068-6 (internal quotation and citation omitted).  "If, however, the defendant's activities

1   are not so pervasive as to subject him to general jurisdiction," the plaintiff may establish

2   specific jurisdiction based on "the nature and quality of the defendant's contacts in

3   relation to the cause of action."  See Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d

4   1280, 1287 (9th Cir. 1977).

5        Here, plaintiffs contend each defendant is subject to both general and specific

6   jurisdiction in California.  The Court addresses each in turn.

7        **A. General Jurisdiction**

8        "General jurisdiction," as noted, "exists when the nonresident has substantial or

9   continuous and systematic contacts with the forum state."  See FDIC, 828 F.2d at 1442

10  (internal quotation and citation omitted).  "[A] plaintiff invoking general jurisdiction must

11  meet an exacting standard," see Ranza, 793 F.3d at 1069 (internal quotation and citation

12  omitted), and "the defendant's contacts [must] be of the sort that approximate physical

13  presence" in the forum state, see Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d

14  1082, 1086 (9th Cir. 2000) (internal quotation and citation omitted).  Where, as here, the

15  defendant is a corporation, "[a] court may exercise general personal jurisdiction over

16  [such] corporation when its contacts render it essentially at home in the state."  See

17  Martinez v. Aero Caribbean, 764 F.3d 1062, 1066 (9th Cir. 2014) (internal quotation and

18  citation omitted).  "[T]he paradigm fora for general jurisdiction are [the] corporation's

19  place of incorporation and principal place of business," and "[o]nly in an exceptional case

20  will general jurisdiction be available anywhere else."  See id. at 1070 (internal quotation

21  and citation omitted); see also Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163,

22  1167, 1173-74 (9th Cir. 2006) (finding non-resident corporation subject to general

23  jurisdiction in state of Washington where contacts included maintaining "office

24  and . . . staff of permanent employees," advertising "in purely local media," targeting

25  customers, generating "hundreds of millions of dollars in annual net sales," conducting

26  "sophisticated market research," and engaging in political activity "to protect its market" in

27  Washington).

28  //

United States District Court
Northern District of California

United States District Court
Northern District of California

### 1. Conn Appliances

There is no dispute that Conn Appliances (1) is incorporated and headquartered in Texas (see Decl. of Mark Prior ("Prior. Decl.") ¶ 1); (2) has retail stores in fifteen states, but has no stores, facilities, or employees in California; (3) does not direct any advertising towards California residents (see id. ¶ 5); (4) is registered to do business in California (see id.; Decl. of Will Wang ("Wang Decl.") ¶ 2, Ex. A); (5) has an agent for service of process in California (see Wang Decl. ¶ 2, Ex. A); (6) generated, over a period of six years, approximately $1.8 million in sales to California residents, i.e., 0.03% of its total sales, none of which were derived from purchases made in stores in California (see Prior Decl. ¶ 5; Pls.' Opp. to Conn Appliances' Mot. to Dismiss at 3 n.2 (calculating revenue));[3] and (7) has initiated collections actions against California residents who failed to pay on credit agreements for purchases made outside of California (see Prior Decl. ¶ 17).

Plaintiffs argue the above-referenced contacts suffice to establish general jurisdiction over Conn Appliances. As set forth below, the Court disagrees. In particular, Conn Appliances is neither incorporated in nor has its principal place of business in California, see Hertz Corp. v. Friend, 559 U.S. 77, 93 (2010) (holding principal place of business is generally where "corporation maintains its headquarters," i.e., its "nerve center"), and its small percentage of sales to California residents, which sales derived primarily from transactions that occurred in other states, are "minor compared to its other [nation]wide contacts," see Martinez, 764 F.3d at 1070; see also Shute v. Carnival Cruise Lines, 897 F.2d 377, 381 (9th Cir. 1990) (finding no general jurisdiction where, in two respective years, "[o]nly 1.29% and 1.06% of [defendant's] . . . business was derived from residents of [forum state]"); Focht v. Sol Melia S.A., Case No. C-10-0906 EMC, 2012 WL 162564, at *7 (N.D. Cal. Jan 19, 2012) (finding no general jurisdiction where $11 million in annual sales revenue from California residents accounted for only 0.75% of

---

[3] Included in those $1.8 million in sales were online sales, which accounted for approximately 0.0006% of Conn Appliances' total sales. (See Prior Decl. ¶ 5.)

United States District Court
Northern District of California

defendant's worldwide sales; noting, although volume of sales was "substantial in absolute terms, it [was] insignificant in relative terms").

Plaintiffs next argue Conn Appliances is subject to general jurisdiction in California for the reason that Conn Appliances has "admitted to launching multiple lawsuits against California residents for collection-related purposes." (See Pls.' Opp. to Conn Appliances' Mot. to Dismiss at 9:13-14.)  Such cases, however, "ha[ve] no bearing on" the general jurisdictional analysis.  See Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1490 (9th Cir. 1993) (rejecting filing of "unrelated action" in California as basis for personal jurisdiction); see also Tercica, Inc. v. Insmed Inc., Case No. C 05-5027 SBA, 2006 WL 1626930, at *12 (N.D. Cal. June 9, 2006) (noting "it is clear from Core-Vent that unrelated litigation in a forum state is not a controlling factor in, or even relevant to, the general jurisdictional analysis").

Accordingly, plaintiffs have failed to establish Conn Appliances is subject to general jurisdiction in California.

### 2. MHKH

There is no dispute that MHKH (1) is a professional corporation "registered" in Texas (see Decl. of Steven A. Harr ("Harr Decl.") ¶ 3; Compl. ¶ 9)); (2) has only three offices, all of which are located in Texas (see id. ¶ 4); (3) is comprised of over 150 attorneys, all of whom are licensed to practice in Texas (see id. ¶ 5), and only one of whom is licensed to practice in California (see id. ¶ 6); (4) does not solicit or advertise for business in California (see id. ¶ 7); (5) represents primarily Texas-based commercial entities in Texas-based matters (see id. ¶ 8); (6) has litigated, between 2016 and 2021, over 3,690 matters, nine of which involved pro hac vice appearances in California (see id. ¶ 11, 13); and (7) has sent attorneys to California, "from time to time over the last seven years[,] . . . in furtherance of their representation of non-California clients in non-California matters," including "to participate in depositions, meetings, or other events involving California based witnesses, mediators[,] or arbitrators" (see id. ¶ 14).

Plaintiffs contend the above-referenced contacts suffice to establish general

jurisdiction over MHKH.  The Court, again, disagrees.  In particular, MHKH is neither

incorporated in nor has its principal place of business in Texas, and its pro hac vice

appearances, which are "inherently temporary," and other litigation-related activities

"hardly approximate[] a physical presence in [California]."  See Advanced Multilevel

Concepts, Inc. v. Stalt, Inc., Case No. 11-6679-SC, 2012 WL 1835734, at *3 (N.D. Cal.

May 21, 2012) (finding no general jurisdiction based on three "pro hac vice appearances"

and "six visits to California for the purposes of mediation, conducting depositions, and

other trial machinations"); see also Bancroft,  223 F.3d at 2000 (requiring contacts "of the

sort that approximate physical presence" in forum state).

Accordingly, plaintiffs have failed to establish MHKH is subject to general

jurisdiction in California.

**B. Specific Jurisdiction**

"Even without general jurisdiction over the defendant, the court in [the forum state]

[will] have jurisdiction specific to the case at bar, if the controversy [is] sufficiently related

to or arose out of [the defendant's] contacts with the forum state."  Omeluk v. Langsten

Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995).  In the Ninth Circuit, the following

three-prong test is used to determine whether a district court has specific jurisdiction over

a non-resident defendant:

> (1) The non-resident defendant must purposefully direct his activities or
> consummate some transaction with the forum or resident thereof; or
> perform some act by which he purposefully avails himself of the privilege of
> conducting activities in the forum, thereby invoking the benefits and
> protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's
> forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial
> justice, i.e. it must be reasonable.

See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).

"The plaintiff bears the burden on the first two prongs."  Boschetto v. Hansing, 539

F.3d 1011, 1016 (9th Cir. 2008).  "If the plaintiff establishes both prongs one and two, the

defendant must come forward with a compelling case that the exercise of jurisdiction

United States District Court
Northern District of California

would not be reasonable." Id. (internal quotation and citation omitted). "[I]f the plaintiff fails at the first step," however, "the jurisdictional inquiry ends and the case must be dismissed." Id.

Here, with respect to the first prong, the parties disagree as to whether a purposeful availment or purposeful direction analysis is appropriate. Plaintiffs argue the Court should apply a purposeful availment analysis (see Pls.' Opp. to Conn Appliances' Mot. to Dismiss at 8:24-26), whereas defendants argue the Court should apply a purposeful direction analysis (see Conn Appliances' Reply in Supp. of Mot. to Dismiss at 4:8-10).

Although the phrase "purposeful availment" is often used to include both purposeful availment and purposeful direction, "availment and direction are, in fact, two distinct concepts." See Schwarzenegger, 371 F.3d at 802. "A purposeful availment analysis is most often used in suits sounding in contract," whereas "[a] purposeful direction analysis . . . is most often used in suits sounding in tort." Id.

Here, plaintiffs' quantum meruit claim, although based on a purported "quasi-contract" rather than a "true contract," see FDIC v. Dintino, 167 Cal. App. 4th 333, 346 (2008), is best characterized as sounding in contract rather than in tort, whereas there can be no dispute that their copyright infringement claim, and their UCL claim based thereon, sound in tort, see AMA Multimedia, LLC v. Wanat, 970 F.3d 1201, 1208 (9th Cir. 2020). Consequently, with respect to plaintiffs' quantum meruit claim, the Court will apply a purposeful availment analysis, and, with respect to plaintiffs' copyright infringement and UCL claims, the Court will apply a purposeful direction analysis. See Data Disc, 557 F.2d at 1289 n.8 (noting, where "plaintiff raises two [or more] separate causes of action," court must have personal jurisdiction over defendants "with respect to each claim"); Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A., 972 F.3d 1101, 1107 (9th Cir. 2020) (noting, "[w]hen both contract and tort claims are at issue, both tests are relevant").

//

8

### 1. Purposeful Availment – Quantum Meruit Claim

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state."  <u>Boschetto</u>, 539 F.3d at 1016 (internal quotation and citation omitted).  When assessing whether a defendant has engaged in such conduct, courts "must evaluate the parties' entire course of dealing," including "prior negotiations and contemplated future consequences, along with the terms of the contract."  See <u>Glob. Commodities</u>, 972 F.3d at 1108 (internal quotation and citation omitted).

### a. Conn Appliances

Plaintiffs argue "the entirety of Conn Appliances' dealings with [p]laintiffs suffice[s] to establish minimum contacts" with California.  (<u>See</u> Pls.' Opp. to Conn Appliances' Mot. to Dismiss at 11:1-3.)  As relevant thereto, the following facts are undisputed: (1) Conn Appliances contacted plaintiffs, who resided in California, regarding 43 TCPA cases over the course of a year, all of which matters were pending before either the American Arbitration Association ("AAA") or non-California courts (see Woolfson Decl. ¶¶ 12-13); (2) for 29 of those matters, Conn Appliances retained and/or designated plaintiffs to perform work (<u>see</u> <u>id.</u> ¶ 12); (3) the contracts were mailed or e-mailed to plaintiffs by Conn Appliances or its attorneys, "executed" by plaintiffs in California, and contained no choice-of-law provision (<u>see</u> <u>id.</u> ¶¶ 12-13, Exs. E, F, G, I, M, P, Q, S, T; Pls.' Opp. to Conn Appliances' Mot. to Dismiss at 11:6-7); (4) in October 2016, Woolfson inspected Conn Appliances' telephone system in Texas to evaluate whether it complied with the requirements of the TCPA (<u>see</u> Prior Decl. ¶ 9) and, based thereon, prepared an expert report that "served as a template for . . . Woolfson's expert reports in future TCPA [cases]" (<u>see</u> <u>id.</u> ¶ 10); (5) plaintiffs performed in California the "vast majority" of their work under the contracts, "the bulk of [which] work consisted of drafting . . . expert reports" for Conn Appliances' TCPA cases (<u>see</u> Woolfson Decl. ¶¶ 9-10); and (6) Conn Appliances mailed checks to plaintiffs in California (<u>see</u> <u>id.</u> ¶ 11).

United States District Court
Northern District of California

1      Plaintiffs first contend the purposeful availment test is satisfied because they

2  performed "[n]early all of [their] work" in California.  (See Pls.' Opp. to Conn Appliances'

3  Mot. to Dismiss at 11:6-9.)  Plaintiffs do not allege, however, that they were contractually

4  obligated to perform any work in California, and "the unilateral activity of those who claim

5  some relationship with a nonresident defendant cannot satisfy the requirement of contact

6  with the forum [s]tate."  See McGlinchy v. Shell Chem. Co., 845 F.2d 802, 816 (9th Cir.

7  1988) (finding "statement that [plaintiffs] 'performed 90% of their activities in [California],'

8  even if accurate, describe[d] only unilateral activity" that "fail[ed] to create personal

9  jurisdiction over [defendant]") (alteration omitted); Wickline v. United Micronesia Dev.

10  Assoc., Inc., Case No. C 14-00192 SI, 2014 WL 2938713, at *7 (N.D. Cal. June 30, 2014)

11  (finding "the fact that plaintiff performed the majority of his duties in California, his place

12  of residence, . . . [was] insufficient to establish purposeful availment" where plaintiff did

13  not allege "any of his duties or obligations under the contract were directed at California

14  residents or . . . businesses").  Indeed, as Conn Appliances points out, the reports were

15  "essentially cookie cutter templates" based on Woolfson's inspection of Conn Appliances'

16  telephone system in Texas, and, consequently, could have been prepared from any

17  location.  (See Conn Appliances' Reply in Supp. of Mot. to Dismiss at 5:4-12; see also

18  Harvey Decl. ¶ 9; Woolfson Decl. Exs. K, O, R);[4] BDC Advisors, LLC v. JFK Health Sys.,

19  Inc., Case No. C 98-1110 SI, 1998 WL 283581, at *1, 3-4 (N.D. Cal. May 22, 1998)

20  (finding no personal jurisdiction where, although defendant sought consulting services

21  from California resident plaintiff who performed "majority of . . . work" on contract in

22  California, plaintiff's "consulting strategy was based on its familiarity with New Jersey

23  [healthcare market]").

24      Although plaintiffs, citing Global Commodities, argue "[t]he same result must be

25  reached here" (see Opp. at 12:8), the case is readily distinguishable on its facts, see

26

27      _____

       [4] For example, Woolfson could have opted to spend the winter months drafting
28  reports in Hawaii.

1   Glob. Commodities, 972 F.3d at 1108 (finding purposeful availment where Honduran

2   defendant "sustained a relationship with [California plaintiff] over several years and

3   hundreds of contracts" for purchase of "millions of dollars of goods to be shipped from the

4   United States" and "graded according to American standards, [with] inspection

5   certificates . . . issued in California"; further noting defendant's officers "came to

6   [plaintiff's] office in California" and, while there, made misrepresentations on which

7   plaintiff's cause of action was in part based).

8        Here, although Conn Appliances made the initial contact with plaintiffs and sent

9   payments to plaintiffs in California, it did not negotiate, execute, or have obligations under

10  the contract in California.  Rather, the contracts were negotiated by mail and e-mail,

11  contained no choice of law clause, made no reference to California, were entered in

12  connection with TCPA cases pending before either AAA or non-California courts, and

13  required Woolfson to "deliver[]" his work product "directly to [Conn Appliances]," i.e., to

14  Texas.  (See Woolfson Decl. ¶ 12, Exs. E, F, G, J, M, P, S, T); see also McGlinchy, 845

15  F.2d at 816-17 (finding no purposeful availment where contract was executed by mail,

16  was not performed or executed by defendants in California, and made no reference to

17  California).  In sum, there were no terms in the contracts indicating Conn Appliances

18  "contemplated an effect in California, much less that any such effect should be

19  considered a material term of agreement."  See McGlinchy, 845 F.2d at 817.

20       Lastly, plaintiffs argue that the purposeful availment test is satisfied for the reason

21  that Conn Appliances has "fil[ed] several lawsuits against California [residents] for

22  collection-related purposes."  (See Pls.' Opp. to Conn Appliances' Mot. to Dismiss at

23  11:10-13.)  As Conn Appliances points out, however, those lawsuits "did not

24  involve . . . Woolfson, the reports [he] prepared for [Conn Appliances], or the subject

25  matter of his reports (see Suppl. Decl. of Mark Prior ¶ 5), and, consequently, are not

26  relevant to the specific jurisdiction analysis, see Axiom Foods, Inc. v. Acerchem Int'l, Inc.,

27  874 F.3d 1064, 1068 (9th Cir. 2017) (noting specific jurisdiction looks to defendant's "suit-

28  related conduct").

United States District Court
Northern District of California

1    Accordingly, to the extent plaintiffs rely on purposeful availment, they have failed

2 to establish that Conn Appliances is subject to specific jurisdiction in California.

3                                    **b. MHKH**

4    Plaintiffs argue that "[t]he entirety of [MHKH's] dealings with [p]laintiffs suffice[s] to

5 establish minimum contacts" with California.  (See Pls.' Opp. to MHKH Mot. to Dismiss at

6 11:14-15.)  In support of their argument, plaintiffs rely on the undisputed facts that MHKH

7 contacted plaintiffs, who resided in California, in connection with at least 31 of Conn

8 Appliances' TCPA cases, and retained and/or designated plaintiffs to do work in at least

9 17 of those matters (see Prior Decl. Ex. C at 2 (listing matters)), the majority of such work

10 being the production of reports written by Woolfson in California (see Woolfson Decl.

11 ¶¶ 9-10).

12    Plaintiffs' arguments with respect to MHKH are essentially the same as the

13 arguments they assert as to Conn Appliances.  Accordingly, to the extent they rely on

14 purposeful availment, plaintiffs, for the same reasons set forth above as to Conn

15 Appliances, have failed to establish MHKH is subject to specific jurisdiction in California.

16            **2. Purposeful Direction – Copyright and UCL Claims**

17    Purposeful direction is analyzed under a three-prong "effects" test, which "requires

18 that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at

19 the forum, (3) causing harm that the defendant knows is likely to be suffered in the forum

20 state."  See Schwarzenegger, 374 F.3d at 803 (internal quotation and citation omitted).

21                                 **a. Conn Appliances**

22    As to the first prong, plaintiffs allege Conn Appliances intentionally submitted, in

23 the Hernandez case, an altered version of the Johnson Report.  (See Compl. at 13:19-

24 22.)  Consequently, the first prong is satisfied.

25    As to the second prong, plaintiffs, relying on an "individual targeting" theory, argue

26 that Conn Appliances expressly aimed its conduct at California by allegedly infringing

27 Woolfson's copyright while knowing he resided in California.  (See Pls.' Opp. to Conn

28 Appliances' Mot. to Dismiss at 13:11-13); see also Axiom, 874 F.3d at 1069 (noting, "[a]

                                            12

theory of individual targeting alleges that a defendant engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state" (internal quotation and citation omitted)).  The Ninth Circuit has held, however, that although "a theory of individualized targeting may [be] relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction."  See Axiom, 874 F.3d at 1070 (noting the Supreme Court, in Walden v. Fiore, 571 U.S. 277, 289 (9th Cir. 2014), "made clear that [courts] must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum"); see also Janus v. Freeman, 840 Fed. App'x 928, 932 (9th Cir. 2020) (noting "'individualized targeting' theory of personal jurisdiction in copyright cases did not survive Walden").

Likewise unavailing is plaintiffs' argument that Conn Appliances expressly aimed its conduct at California because it "reached out to" plaintiffs in California, "retained" them in a number of TCPA cases, and "had [them] perform substantial work in California." (See Pls.' Opp. to Conn Appliances' Mot. to Dismiss at 13:14-18.)  In particular, as discussed in detail above, none of those TCPA cases involved a California resident or a California forum, and neither plaintiff "had [to] perform" any work in California.  (See id.) As noted, the minimum contacts analysis looks to the defendant's contacts "with the forum state itself, not [its] contacts with persons who reside there," and, here, neither Conn Appliances' contacts nor plaintiffs' injury can be deemed "tethered to [California] in any meaningful way."  See Picot v. Weston, 780 F.3d 1206, 1215 (9th Cir. 2015) (noting defendants' injury was "entirely personal to him and would follow him wherever he might choose to live or travel"); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985) (holding "an individual's contract with an out-of-state party alone [cannot] automatically establish sufficient minimum contacts in the other party's home forum" (emphasis omitted)).

Lastly, plaintiffs contend Conn Appliances has acknowledged that it improperly used a Woolfson report in "one of its California matters."  (See Pls.' Opp. to Conn

1    Appliances' Mot. to Dismiss at 13:13-14.)[5]  The only TCPA case identified in the

2    complaint, however, is the Hernandez case (see Compl. at 13:10-22); see also Data

3    Disc, 557 F.2d at 1287 (noting specific jurisdiction is based on defendant's contacts "in

4    relation to the cause of action"), which matter undisputedly had no connection to

5    California (see Harvey Decl. ¶ 16 (describing Hernandez matter as AAA arbitration

6    designated for hearing in Arizona)).

7        Accordingly, to the extent they rely on purposeful direction, plaintiffs have failed to

8    establish Conn Appliances is subject to specific jurisdiction in California.

9                                    **b. MHKH**

10       With respect to MHKH, plaintiffs rely on the same arguments they assert as to

11   Conn Appliances.  Accordingly, to the extent they rely on purposeful direction, plaintiffs,

12   for the same reasons set forth above as to Conn Appliances, have failed to establish

13   MHKH is subject to specific jurisdiction in California.[6]

14   **C. Leave to Conduct Jurisdictional Discovery or Amend**

15       Plaintiffs request that, "in the event the Court believes more facts are needed to

16   establish jurisdiction" over either defendant, they be afforded "leave to conduct

17   jurisdictional discovery or amend their complaint."  (See Pls.' Opp. to Conn Appliances'

18   Mot. to Dismiss at 17:3-5, 16-18; Pls.' Opp. to MHKH's Mot. to Dismiss at 17:17-19,

19

20       [5] Although Conn Appliances did aver that, subsequent to its last retention of
21   Woolfson, it submitted a Woolfson report in a AAA arbitration designated for hearing in
     California, it has submitted undisputed evidence that, in such timeframe, all of its other
22   TCPA cases were designated for hearing either in Texas or in states other than
     California.  (See Prior. Decl. ¶ 15.)  Additionally, Conn Appliances has submitted
23   undisputed evidence that the one matter designated for hearing in California involved a
     California resident who purchased goods from a Conn Appliances store in New Mexico
24   (see Harvey Decl. ¶ 15), that the goods were to be delivered to an address in New
     Mexico (see Prior Decl. ¶ 15), that said matter was assigned a California hearing location
25   by AAA due to an arbitration clause providing for a hearing "at a location convenient to
     [the customer's] residence" (see id. ¶ 14, Ex. D at 2), that all proceedings therein were
26   conducted by attorneys residing in Illinois and Texas, and that the matter settled prior to
     the arbitration hearing (see Harvey Decl. ¶ 15).

27       [6] In light of the above findings, the Court does not address herein the remaining
28   two prongs of the specific jurisdiction test.

18:17-19.)

The Court "has broad discretion to permit or deny discovery" on jurisdictional issues.  See Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986).  Such discovery "may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing is necessary."  Boschetto, 539 F.3d at 1020.  Nevertheless, a "colorable basis" for personal jurisdiction must be shown, see Lang v. Morris, 823 F. Supp. 2d 966, 979 (N.D. Cal. 2011), and "a mere 'hunch' that discovery might yield jurisdictionally relevant facts" is an "insufficient reason[] for a court to grant jurisdictional discovery," see LNS Enters. LLC v. Cont'l Motors, Inc., 22 F.4th 852, 864-65 (9th Cir. 2022) (internal quotation, citation, and alternation omitted).

Here, plaintiffs contend jurisdictional discovery would "unearth further details supporting the exercis[e] of jurisdiction."  (See Pls.' Opp. to Conn Appliances' Mot. to Dismiss at 17:21-22.)  In that regard, plaintiffs argue that, because defendants hired plaintiffs and subsequently replaced them with another expert from California, Conn Appliances "potentially retain[ed] other" California-based "vendors, distributors, delivery drivers, repairmen, collections agencies," or "expert witnesses" (see id. at 17:21-18:1), and MHKH "potentially retain[ed] other" California-based "counsel, discovery vendors, court reporters, service companies, investigators, witnesses, [or] expert witnesses" (see Pls.' Opp. to MHKH's Mot. to Dismiss at 18:8-16).  Such argument, however, "amount[s] to nothing more than a hunch that discovery might reveal facts relevant to the jurisdictional analysis," see LNS Enters., 22 F.4th at 856; see also Corcera Sols., LLC v. Razor, Inc., Case No. 5:13-cv-05113-PSG, 2014 WL 587869, at *3 (N.D. Cal. Feb. 14, 2014) (noting "broad speculations" unsupported by evidence "cannot rise above the 'mere hunch' bar that the Ninth Circuit requires cleared to obtain jurisdictional discovery"), and, consequently, does not warrant the relief requested.  The Court next turns to plaintiffs' request for leave to amend.

As noted above, plaintiffs' claims are based on a single wrongful act, specifically,

United States District Court
Northern District of California

1  an allegedly improper use in the Hernandez case, which use, having no connection with

2  California, the Court has found insufficient to support the exercise of personal jurisdiction

3  over either defendant.  As further noted, however, defendants have acknowledged one

4  other potentially improper use, which has at least some arguable connection with

5  California.  Under such circumstances, the Court will afford plaintiffs leave to amend to

6  plead, if they so choose, claims based on that additional use.  See Fed. R. Civ. P

7  15(a)(2) (providing leave to amend should be freely given "when justice so requires").[7]

8          Accordingly, plaintiffs' request for leave to conduct jurisdictional discovery will be

9  denied, and plaintiffs' request for leave to amend their complaint will be granted.

10 **II. Venue and Forum Non Conveniens**

11         Defendants have jointly filed a third motion, in which they contend the instant

12 action is subject to dismissal on the additional ground that the Northern District of

13 California is not a proper venue and, alternatively, that the action should be transferred,

14 for convenience, to the Southern District of Texas.

15         In light of the above findings as to personal jurisdiction, defendants' joint motion

16 will be denied as moot.

17                                              **CONCLUSION**

18       For the reasons stated above:

19       1. Conn Appliances' motion to dismiss for lack of personal jurisdiction is hereby

20 GRANTED.

21       2. MHKH's motion to dismiss for lack of personal jurisdiction is hereby GRANTED.

22       3. Plaintiffs' request for leave to conduct jurisdictional discovery is hereby

23 DENIED.

24       4. Plaintiffs' request for leave to amend is, for the limited purpose set forth above,

25 hereby GRANTED, and any such amended pleading shall be filed on or before April 11,

26

27          [7] By affording such leave, the Court makes no finding as to the effect of any such
28 amendment on the personal jurisdictional analysis.

                                                    16

2022.

5. Defendants' joint motion to dismiss for improper venue or, in the alternative, to transfer to the Southern District of Texas, is hereby DENIED as moot.

6. In light of the above, the Case Management Conference currently scheduled for April 22, 2022, is hereby CONTINUED to June 17, 2022, at 10:30 a.m.  A Joint Case Management Conference Statement shall be filed no later than June 10, 2022.

**IT IS SO ORDERED.**

Dated: March 25, 2022

MAXINE M. CHESNEY
United States District Judge