1
2
3
4

IN THE UNITED STATES DISTRICT COURT

5

FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7     AARON WOOLFSON, et al.,

                    Plaintiffs,

8

9            v.

10    CONN APPLIANCES, INC., et al.,

                    Defendants.

11

12

13

Case No. 21-cv-07833-MMC

**ORDER DENYING DEFENDANTS'
MOTIONS TO DISMISS FIRST
AMENDED COMPLAINT FOR LACK
OF PERSONAL JURISDICTION;
DENYING DEFENDANTS' JOINT
MOTION TO DISMISS FOR
IMPROPER VENUE OR, IN THE
ALTERNATIVE, TO TRANSFER**

14        Before the Court are the following three motions, each filed May 16, 2022:

15    (1) defendant Conn Appliances, Inc.'s ("Conn Appliances") "Renewed Motion to Dismiss

16    Based on Lack of Personal Jurisdiction"; (2) defendant Munsch Hardt Kopf & Harr, P.C.'s

17    ("MHKH") "Motion to Dismiss First Amended Complaint Based on Lack of Personal

18    Jurisdiction"; and (3) defendants' "Renewed Motion to Dismiss for Improper Venue or, in

19    the Alternative, to Transfer Venue to the Southern District of Texas."  Plaintiffs have filed

20    opposition to the first two motions, to which defendants have replied.  Having read and

21    considered the papers filed in support of and in opposition to the motions, the Court rules

22    as follows.[1]

23                          **FACTUAL BACKGROUND[2]**

24        Plaintiff Aaron Woolfson ("Woolfson") is a database and Telephone Consumer

25

26        _____

            [1] By order filed July 25, 2022, the Court took the matters under submission.

27

            [2] The following facts are taken from the allegations in the operative complaint, the
28    First Amended Complaint ("FAC").

United States District Court
Northern District of California

Protection Act ("TCPA") expert and the founder of plaintiff TelSwitch, Inc. ("TelSwitch"), a "California-based telecommunications and technology company."  (See FAC at 4:11-14.) From mid-2016 to April 2017, Woolfson provided "consulting and expert legal services" to defendant Conn Appliances, a Texas-based "retail furniture and appliance outlet," in connection with "legal actions" brought by Conn Appliance customers who "complained they [had] receive[d] calls relating to past due payments in violation of the TCPA."  (See FAC at 5:15-19, 5:28-6:1.)  Those legal actions (hereinafter, "TCPA cases"), were "handled primarily" by defendant MHKH, a Texas law firm.  (See FAC at 2:2-5, 6:17-18.)

In November 2016, Woolfson "traveled to [Conn Appliances'] facilities in Texas" and "inspected [its] telephone systems and operating procedures . . . so that [he] could offer opinions and expert testimony about . . . those systems."  (See FAC at 6:9-13.) Based on said inspection, Woolfson prepared an expert report (hereinafter, "Harper Report"),[3] which was filed in a TCPA case brought against Conn Appliances in a district court in Texas, and from which he derived "similar" expert reports, including a report (hereinafter, "Johnson Report") prepared for an arbitration to be conducted by the American Arbitration Association ("AAA").  (See FAC at 7:7-22.)  In March 2017, "shortly after" Woolfson prepared the Johnson Report, Conn Appliances "stopped paying" plaintiffs for their services, and, in April 2017, plaintiffs stopped doing work for Conn Appliances.  (See FAC at 8:8-11.)

On July 21, 2020, Woolfson "received an email from an attorney," alerting him that Conn Appliances and MHKH "had listed him as an expert witness and had submitted" an "altered version of the Johnson Report" in one of its TCPA cases (hereinafter, "Hernandez case").  (See FAC at 9:4-24.)  Plaintiffs allege that Conn Appliances and MHKH used the report "to create the false impression that [p]laintiffs had been retained as experts in the case without having to actually pay [p]laintiffs for that retention . . . ,

_____

[3] The Harper Report was registered with the United States Copyright Office on April 23, 2021.  (See FAC at 11:24-25.)

1   even though they knew that [p]laintiffs had not done any services for [them] since April

2   2017."  (See FAC at 11:8-12.)

3   **PROCEDURAL BACKGROUND**

4   On October 6, 2021, plaintiffs filed their initial Complaint, wherein Woolfson, based

5   on the above allegations, asserted a cause of action for "Copyright Infringement," and

6   both Woolfson and TelSwitch asserted causes of action for "Unfair Business Practices

7   Under Cal. Bus. & Prof. Code 17200" ("UCL") and for "Quantum Meruit."

8   On December 6, 2021, Conn Appliances and MHKH each filed a motion to dismiss

9   for lack of personal jurisdiction, as well as a joint motion to dismiss for improper venue or,

10   in the alternative, to transfer the instant action to the Southern District of Texas.  In a

11   declaration submitted in support of their motions, Conn Appliances' General Counsel

12   identified another TCPA case in which an altered version of the Johnson Report was

13   used (hereinafter, "Parras case").  (See Decl. of Mark Prior in Supp. of Mot. to Dismiss

14   Initial Compl. (hereinafter, "Prior Decl.") ¶¶ 15-16.)

15   By order filed March 25, 2022, the Court, finding the alleged wrongful acts

16   identified in plaintiffs' complaint were not sufficient to establish the requisite minimum

17   contacts with California, dismissed the complaint for lack of personal jurisdiction, but

18   afforded plaintiffs leave to amend for the limited purpose of pleading claims based on

19   defendants' use of Woolfson's report in the Parras case.  (See Doc. No. 42.)  On April 11,

20   2022, plaintiffs filed their FAC, reasserting the above-referenced three causes of action,

21   after which defendants filed the instant three motions.

22   **DISCUSSION**

23   By their respective motions, defendants again seek an order dismissing the above-

24   titled action, or, in the alternative, transferring it to the Southern District of Texas, on the

25   grounds that neither defendant is subject to personal jurisdiction in California, the

26   Northern District of California is not a proper venue, and the Northern District is not a

27   convenient forum.

28   //

United States District Court
Northern District of California

United States District Court
Northern District of California

## A. Personal Jurisdiction

For a court to exercise personal jurisdiction over a non-resident defendant, "due process requires that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantive justice." See Ranza v. Nike, Inc., 793 F.3d 1059, 1068 (9th Cir. 2015) (internal quotation and citation omitted). "The strength of the contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." Id.

Here, plaintiffs contend defendants are subject to specific jurisdiction in California. (See Pls.' Combined Opp. to Defs.' Mots. to Dismiss (hereinafter, "Opp.") at 7:3-7.) Specific jurisdiction over a non-resident defendant is analyzed under the following three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). "The plaintiff bears the burden on the first two prongs," and where, as here, the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of the jurisdictional facts." See Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008). "If the plaintiff establishes both prongs one and two, the defendant must come forward with a compelling case that the exercise of jurisdiction would not be reasonable." Id. (internal quotation and citation omitted). "[I]f the plaintiff fails at the first step," however, "the jurisdictional inquiry ends and the case must be dismissed." Id.

The first prong of the specific jurisdiction analysis can be satisfied under either a

4

1  "purposeful availment" test or a "purposeful direction" test.  See Schwarzenegger, 374

2  F.3d at 802.  "A purposeful availment analysis is most often used in suits sounding in

3  contract," whereas "[a] purposeful direction analysis . . . is most often used in suits

4  sounding in tort."  Id.  Here, plaintiffs' quantum meruit claim, although based on a

5  purported "quasi-contract" rather than a "true contract," see FDIC v. Dintino, 167 Cal.

6  App. 4th 333, 346 (2008), is best characterized as sounding in contract rather than in tort,

7  whereas their copyright infringement claim, and their UCL claim based thereon, sound in

8  tort, see AMA Multimedia, LLC v. Wanat, 970 F.3d 1201, 1208 (9th Cir. 2020).

9  Consequently, the Court finds a purposeful availment analysis is applicable to plaintiffs'

10  quantum meruit claim and a purposeful direction analysis is applicable to their copyright

11  infringement and UCL claims.  See Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d

12  1280, 1289 n.8 (9th Cir. 1977) (noting, where "plaintiff raises two [or more] separate

13  causes of action," court must have personal jurisdiction over defendants "with respect to

14  each claim").  The Court next addresses plaintiffs' claims in the order alleged in the FAC.[4]

15       **1.  Copyright Infringement & UCL Claims**

16       In their First and Second Causes of Action, respectively, plaintiffs allege

17  defendants infringed Woolfson's copyright and, in so doing, engaged in unfair business

18  practices.  As set forth below, the Court finds plaintiffs have made a prima facie showing

19  of specific jurisdiction with respect to said claims.

20       **a.  Purposeful Direction**

21       Purposeful direction is analyzed under a three-prong "effects" test, which "requires

22  that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at

23  the forum, (3) causing harm that the defendant knows is likely to be suffered in the forum

24  _____

25       [4] Although the Court must have jurisdiction over each defendant, see Sher v. Johnson, 911 F.2d 1357, 1365 (9th Cir. 1990), for purposes of the instant order, the relevant arguments and analysis as to Conn Appliances and MHKH are essentially the

26  same, see Legal Additions LLC v. Kowalski, No. C-08-2754 EMC, 2009 WL 1226957, at

27  *9 (N.D. Cal. Apr. 30, 2009) (finding "no need to address personal jurisdiction with respect to each [d]efendant separately" where relevant contacts as to each defendant were the same).

28

United States District Court
Northern District of California

1   state."  See Schwarzenegger, 374 F.3d at 803 (internal quotation and citation omitted).

2       Here, as to the first prong, the Court finds defendants committed intentional acts

3   by submitting, in the Hernandez and Parras cases, altered versions of the Johnson

4   Report.  See id. at 806 (holding "'intentional act' test . . . refer[s] to an intent to perform an

5   actual, physical act in the real world").

6       As to the second prong, the Court finds defendants expressly aimed their allegedly

7   tortious conduct at California by submitting an altered report as evidence in the Parras

8   case, which was designated for an in-person hearing in San Francisco, California.  (See

9   Suppl. Decl. of Mark Prior in Supp. of Mot. to Dismiss Initial Compl. (hereinafter, "Prior

10  Suppl. Decl.") ¶ 8.)  Although the hearing location was assigned by AAA based on the

11  residence of the claimant, defendants knew, at the time of the allegedly infringing act,

12  that the arbitration was to take place in California.  Given the above circumstances, the

13  Court finds defendants "reasonably [should have] anticipate[d] being haled into court [in

14  California] to answer for their tortious behavior."  See Pakootas v. Teck Cominco Metals,

15  Ltd., 905 F.3d 565, 577 (9th Cir. 2018); see also Ayla, LLC v. Ayla Skin Pty. Ltd., 11 F.4th

16  972, 981 (9th Cir. 2021) (finding conduct expressly aimed at forum where defendant did

17  not "merely place its [infringing] products into the stream of commerce, running the risk

18  that [the] products might randomly or serendipitously arrive in the forum," but, rather,

19  "offer[ed] its products directly for sale" to forum residents and "determine[d] how and

20  whether its orders [were] fulfilled").

21      Defendants argue their conduct was not expressly aimed at California for the

22  asserted reason that all of the other TCPA cases in which they used an altered report

23  were designated for hearings in states other than California.  (See MHMK's Mot. to

24  Dismiss FAC for Lack of Personal Jurisdiction at 13:22-14:2; Conn Appliances' Reply in

25  Supp. of Mot. to Dismiss FAC for Lack of Personal Jurisdiction at 8:24-28; see also Decl.

26  of Michael Harvey in Supp. of Defs.' Mots. to Dismiss Initial Compl. ¶ 15.)  Even "[a]

27  single forum contact can support jurisdiction, however, where, as here, "the cause of

28  action arises out of that particular purposeful contact . . . with the forum state."  See

1   Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1210 (9th

2   Cir. 2006) (internal quotation, citation, and alterations omitted) (finding specific jurisdiction

3   based on "very few contacts" that were "directly related to the suit"); see also Cisco Sys.,

4   Inc. v. Dexon Comput., Inc., 541 F. Supp. 3d 1009, 1017 (N.D. Cal. 2021) (finding

5   conduct expressly aimed at California where infringing products were sold "directly to

6   California customers," even though "many more [infringing] products" were sold

7   "elsewhere"); Ayla, 11 F.4th at 981 (holding there is "no small percentage of sales

8   exception to the purposeful direction" test).[5]

9       As to the third prong, it was foreseeable that "some of [the alleged] harm would

10  occur in" California, where plaintiffs undisputedly were known to reside.  See Brayton

11  Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1131 (9th Cir. 2010) (finding harm

12  foreseeable in California where defendant "committed its infringing acts knowing [plaintiff

13  was] a resident of" California); see also Adobe Sys. Inc. v. Blue Source Grp., Inc., 125 F.

14  Supp. 3d 945, 932 (N.D. Cal. 2015) (noting, where "party brings a claim for infringement

15  of intellectual property, . . . it is foreseeable that the loss will be inflicted both in the forum

16  where the infringement took place and where the copyright holder has its principal place

17  of business" (internal quotation, citation, and alteration omitted)).[6]

18                    **b.  Arise Out of or Relate to**

19      Next, plaintiffs' claims must "arise out of or relate to the defendant's contacts with

20  the forum."  See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1025

21  (2021) (internal quotation and citation omitted).

22      Here, plaintiffs' copyright infringement and UCL claims clearly relate to defendants'

23

24          [5] In light of this finding, the Court does not address herein plaintiffs' other
    arguments with respect to the express aiming prong, none of which arguments the Court

25  found persuasive.

26          [6] To the extent defendants argue their alleged conduct does not constitute
    copyright infringement, such arguments go to the merits of plaintiffs' claims and,

27  consequently, will not be considered at this stage of the proceedings.  See Cisco, 541 F.
    Supp. 3d at 1017 (declining to consider defendant's "factual, merits argument" in

28  conducting personal jurisdiction analysis).

United States District Court
Northern District of California

United States District Court
Northern District of California

1  use of an altered report in the Parras case, and although defendants contend plaintiffs

2  have not shown such act is a "but-for" cause of the alleged harm (see MHKH's Mot. to

3  Dismiss FAC at 14:15-27), no such showing is required, see Ford Motor, 141 S. Ct. at

4  1026 (holding "causation-only approach finds no support in th[e] . . . requirement of a

5  'connection' between a plaintiff's suit and a defendant's activities" (citation omitted));

6  Ayla, 11 F.4th at 983 n.5 (clarifying that Ninth Circuit "precedents permit but do not

7  require a showing of but-for causation to satisfy the nexus requirement").

8                            c.  **Reasonableness**

9           As noted, where, as here, "a plaintiff establishes both prongs one and two, the

10  defendant must come forward with a compelling case that the exercise of jurisdiction

11  would not be reasonable." See Boschetto, 539 F.3d at 1016 (internal quotation and

12  citation omitted).  To determine whether such a showing has been made, a court must

13  "balance" seven "factors," specifically, "(1) the extent of the defendant's purposeful

14  interjection into the forum state's affairs; (2) the burden on the defendant of defending in

15  the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the

16  forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution

17  of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient

18  and effective relief; and (7) the existence of an alternative forum." See Core-Vent Corp.

19  v. Nobel Indus. AB, 11 F.3d 1482, 1487-88 (9th Cir. 1993).

20         Here, the Court, in balancing the above factors, finds defendants have failed to

21  come forward with the requisite compelling case.

22         First, defendants purposefully interjected themselves into California by submitting

23  an altered Johnson Report in the Parras case, for the purpose of gaining an advantage in

24  a legal proceeding brought against Conn Appliances by a California resident.  See Ayla,

25  11 F.4th at 984 (noting "purposeful interjection factor in the reasonableness analysis is

26  analogous to the purposeful direction factors" (internal quotation and citation omitted)).

27         Next, although litigating in California may be inconvenient for them, defendants

28  have not shown that the "inconvenience is so great as to constitute a deprivation of due

                                          8

United States District Court
Northern District of California

1  process."  See Hirsch v. Blue Cross, Blue Shield of Kan. City, 800 F.2d 1474, 1481 (9th

2  Cir. 1986).  Nor have defendants identified any conflict with another sovereignty.  See

3  Artec Grp., Inc. v. Klimov, Case No. 15-cv-03449-RMW, 2015 WL 9304063, at *6 (N.D.

4  Cal. Dec. 22, 2015) (finding conflict of sovereignty factor "weigh[ed] in favor of

5  jurisdiction" where defendant failed to identify any such conflict).

6         Further, California has a "strong interest in providing an effective means of redress

7  for its residents [who are] tortiously injured," and "[i]t may be somewhat more costly and

8  inconvenient for [the instant plaintiffs] to litigate in another forum."  See Panavision Int'l,

9  L.P. v. Toeppen, 141 F.3d 1316, 1323-24 (9th Cir. 1998).

10        Lastly, although plaintiffs have not shown "the unavailability of an alternative

11  forum," see Core-Vent, 11 F.3d at 1490 (holding "plaintiff bears the burden of proving the

12  unavailability of an alternative forum"),[7] and some evidence and witnesses are likely

13  located outside of California, see Panavision, 141 F.3d at 1323 (noting efficiency "factor

14  focuses on the location of the evidence and the witnesses"; further noting said factor "is

15  no longer weighed heavily given the modern advances in communication and

16  transportation"), the majority of the factors, as discussed above, tip the balance in favor

17  of the exercise of personal jurisdiction.

18     **2.  Quantum Meruit Claim**

19        In their Third Cause of Action, plaintiffs allege they "are entitled to recover the

20  reasonable value of their services and goods that were provided in the Hernandez [case],

21  the Parras [case], and any other matters in which [d]efendants used their work product

22  without" permission.  (See FAC ¶ 65.)

23

24         [7] Although plaintiffs contend California's UCL is "broader" than the statutory relief
25  offered under Texas law (see Opp. at 18:18-27), they have not shown they "would be
   precluded from suing" defendants in an alternative forum, i.e., Texas, see Core-Vent, 11
26  F.3d at 1490, or that "possible recovery on other tort [or] contract claims would be
   inadequate," see Ceramic Corp. of Am. v. Inka Mar. Corp., 1 F.3d 947, 949 (9th Cir.
27  1993) (holding alternative forum is adequate if it "provide[s] some potential avenue for
   redress," even if the "range of remedies" is not "the same . . . as [those] available in the
28  home forum").

1    Plaintiffs' quantum meruit claim "arises out of a common nucleus of operative

2   facts" with plaintiffs' copyright infringement and UCL claims; consequently, the Court

3   finds it appropriate to exercise pendent personal jurisdiction over said claim.  See Action

4   Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004) (holding

5   "court may assert pendent personal jurisdiction over a defendant with respect to a claim"

6   that "arises out of a common nucleus of operative facts with a claim in the same suit over

7   which the court does have personal jurisdiction").

8   **B. Venue**

9    In their joint motion to dismiss the above-titled action for improper venue or,

10   alternatively, to transfer the action to the Southern District of Texas, defendants, rather

11   than asserting legal arguments, purport to incorporate by reference, under Rule 10(c) of

12   the Federal Rules of Civil Procedure, the entirety of "their moving and rep[l]y papers in

13   support of their earlier motion to dismiss" plaintiffs' initial Complaint.  (See Renewed Mot.

14   to Dismiss for Improper Venue at 2:18-3:10.)  In response, plaintiffs likewise purport to

15   incorporate by reference "the conten[t]s of their opposition to [d]efendants' original

16   motions to dismiss."  (See Opp. at 1:27-28.)

17    Rule 10(c) provides that "[a] statement in a pleading may be adopted by reference

18   elsewhere in the same pleading or in any other pleading or motion."  See Fed. R. Civ. P.

19   10(c).  The Ninth Circuit has held, however, that Rule 10(c) does not provide for the

20   incorporation by reference of legal arguments asserted in prior briefs.  See Swanson v.

21   U.S. Forest Serv., 87 F.3d 339, 345 (9th Cir. 1996) (holding "incorporation of substantive

22   material by reference is not sanctioned by" Rule 10(c); finding "district court did not abuse

23   its discretion in striking [such] incorporations").  Consequently, the parties' above-

24   referenced prior arguments as to venue are not properly before the Court, and

25   defendants' joint motion will be denied.  See also Williams v. County of Alameda, 26 F.

26   Supp. 3d 925, 947 (N.D. Cal. 2014) (declining to consider arguments plaintiff "improperly

27   [sought] to incorporate by reference" under Rule 10(c)).  Even if the Court were to

28   consider such arguments, however, the motion, as set forth below, would be denied on

United States District Court
Northern District of California

its merits.

1.  **Improper Venue**

With respect to plaintiffs' copyright infringement claim, venue is proper "in the district in which the defendant or his agent resides or may be found." See 28 U.S.C. § 1400(a).  "The Ninth Circuit interprets [§ 1400(a)] to allow venue in any judicial district in which the defendant would be amendable to personal jurisdiction if the district were a separate state." Brayton, 606 F.3d at 1128 (internal quotation and citation omitted). Here, as noted, the Parras case was designated for an in-person hearing in the Northern District of California (see Prior Suppl. Decl. ¶ 8 (averring hearing was to occur in San Francisco)), and, consequently, venue is proper in this district for the reasons stated above as to personal jurisdiction.

With respect to plaintiffs' UCL and quantum meruit claims, which are "closely related" to their copyright infringement claim, the Court finds it appropriate to exercise pendent venue.  See Martensen v. Koch, 942 F. Supp. 2d 983, 996 (N.D. Cal. 2013) (holding, "if venue is proper on one claim, the court may find pendent venue for claims that are closely related").

2.  **Inconvenient Venue**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  In determining whether to transfer an action pursuant to § 1404(a), courts weigh the following factors: "(1) plaintiff's choice of forum, (2) convenience of parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum."  See Williams v. Bowman, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).

Here, the Court, weighing the above-referenced factors, finds defendants have not made a "strong showing of inconvenience to warrant upsetting . . . plaintiff[s'] choice of

United States District Court
Northern District of California

1  forum."  See Decker Coal Co. v. Commonwealth Edison Co., 805 F. 2d 834, 843 (9th Cir.

2  1986).

3         First, the convenience of the parties, any local interest in the controversy, and the

4  familiarity of each forum with the applicable law appear to be essentially in balance.  See

5  Barnes & Noble, Inc. v. LSI Corp., 823 F. Supp. 2d 980, 994 (N.D. Cal. 2011) (finding

6  transfer "not appropriate" where "effect would be simply to shift the inconvenience from

7  one party to another" (internal quotation and citation omitted)); Fraser v. Brightstar

8  Franchising LLC, Case No. 16-cv-01966-JSC, 2016 WL 4269869, at *7 (N.D. Cal. Aug.

9  15, 2016) (finding "local interest" factor "neutral" where both districts "ha[d] an interest in

10  resolving the disputes of [their] residents"); Jacobs v. Sustainability Partners, LLC, Case

11  No. 20-cv-01981-PJH, 2020 WL 5593200, at *9 (N.D. Cal. Sept. 18, 2020) (denying

12  transfer where "both courts [were] capable of applying" common and state statutory law

13  under which claims brought).

14         Next, no party has addressed relative court congestion or the feasibility of

15  consolidation, see Vu v. Ortho-McNeil Pharm., Inc., 602 F. Supp. 2d 1151, 1157 (N.D.

16  Cal. 2009) (finding "relative court congestion" and "feasibility of consolidation" factors

17  "neutral" absent evidence that one district was more favorable than the other), and, in an

18  age of electronic records, the ease of access to evidence is a factor carrying little weight,

19  see Jacobs, 2020 WL 5593200, at *9 (noting "[e]ase of access to evidence" not a

20  "predominate concern . . . because advances in technology have made it easy for

21  documents to be transferred to different locations" (internal quotation and citation

22  omitted)).

23         Lastly, as to the convenience of the witnesses, defendants have not met their

24  burden to "identify relevant witnesses, state their location[,] and describe their testimony

25  and its relevance."  See Bowman, 157 F. Supp. 2d at 1108; see also Florens Container v.

26  Cho Yang Shipping, 245 F. Supp. 2d 1086, 1093 (N.D. Cal. 2002) (noting "party

27  seeking . . . transfer cannot rely on vague generalizations," but, rather, must "identify the

28  key witnesses to be called and . . . present a generalized statement of what their

testimony would include").  In particular, although defendants speculate that "[p]laintiffs may need to call as witnesses" the customers, attorneys, and arbitrators involved in other TCPA cases brought against Conn Appliances "in Texas and states other than California" (see Mot. to Dismiss for Improper Venue at 18:25-19:3), defendants have not explained how any of those witnesses "would be able to provide testimony that would tend to establish a basis for imposing civil liability against defendants," see Saleh v. Titan Corp., 361 F. Supp. 2d 1152, 1163-65 (S.D. Cal. 2005) (finding showing of inconvenience inadequate where party "simply provide[d] a list of individuals they 'may' call as witnesses and fail[ed] to establish that th[ose] witnesses [were] likely to have information relevant and material to the[] case"; noting "vague characterizations of [witnesses'] possible testimony d[id] not establish . . . [said] potential witnesses could provide important testimony"); see also Bowman, 157 F. Supp. 2d at 1108 (noting witnesses offering "cumulative" testimony may "not all be necessary").[8]

## CONCLUSION

For the reasons stated above, defendants' respective motions to dismiss for lack of personal jurisdiction, as well as their joint motion to dismiss for improper venue or to transfer the above-titled action, are hereby DENIED.

**IT IS SO ORDERED.**

Dated: August 5, 2022

MAXINE M. CHESNEY
United States District Judge

---

[8] Although defendants contend their "key employees" are located in Texas (see Mot. to Dismiss for Improper Venue at 19:4), courts "give less consideration to the convenience of . . . witnesses employed by a party because those witnesses can be compelled by the parties to testify regardless of where the litigation will occur," see Doe v. Epic Games, Inc., 435 F. Supp. 3d 1024, 1042 (N.D. Cal. 2020), and, to the extent defendants argue they would be unable to compel out-of-state witnesses to testify at trial (see Reply Brief in Supp. of Mot. to Dismiss for Improper Venue at 7:17-24), such argument, absent a sufficient showing that the testimony of those witnesses would be important, does not change the instant analysis.